THE CHURCH IN BOSTON, PETITIONER v. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 7083–77X.     Filed November 1, 1978.

*David Shapiro,* for the petitioner.
*Bernard B. Kornmehl,* for the respondent.

## OPINION

GOFFE, *Judge:* The Commissioner determined that petitioner does not qualify for exemption from Federal income tax under section 501(a), Internal Revenue Code of 1954,[1] as an organization described in section 501(c)(3). Petitioner has challenged respondent's determination by invoking the jurisdiction of this Court for a declaratory judgment pursuant to section 7428. The issue for our decision is whether petitioner satisfies the operational requirements as set forth in the regulations under section 501(c)(3). Sec. 1.501(c)(3)–1(c), Income Tax Regs.

This proceeding was submitted under Rule 122, Tax Court Rules of Practice and Procedure. The parties filed a joint stipulation as to the administrative record along with the administrative record, pursuant to Rule 217, Tax Court Rules of Practice and Procedure, which are assumed to be true for purposes of this proceeding.

The Church in Boston (herein petitioner) was incorporated in the Commonwealth of Massachusetts on September 10, 1973, as a "not for profit" corporation. Its stated purpose in its articles of organization was to "spread the Gospel of the Lord Jesus Christ." On October 25, 1975, petitioner applied for exemption as an organization described in section 501(c)(3) by filing an application, Form 1023, with the District Director at Boston,

---

[1]All section references are to the Internal Revenue Code of 1954, as amended.

Mass. The application was signed by Mr. Salvador Benoit, president of petitioner.

The officers of petitioner included, in addition to Mr. Benoit, Messrs. William Lawson (vice president), James McKee (treasurer), and Wayne Johnson (clerk). Petitioner has no membership requirements other than a belief in Jesus Christ. No fees or dues are required for membership. The only financial source with which petitioner conducts its activities comes from contributions. For the taxable years 1973, 1974, and 1975 petitioner received, as contributions, the respective amounts of $3,449.45, $73,521.47, and $53,580.74. Mr. Benoit is the only officer of petitioner who receives compensation. For the taxable years 1973, 1974, and 1975 Mr. Benoit received compensation in the respective amounts of $100, $3,853.49, and $8,975.

Petitioner's initial application reflected that during 1973 and 1974 it made various grants to a number of individuals which amounted to $1,190 and $18,088.72, respectively. In response to petitioner's application, respondent on May 3, 1976, requested petitioner to explain these expenditures. Additionally, respondent asked petitioner whether it lent money with no obligation to pay interest or gave money to its members. In this regard respondent sought a detailed description of the "grant program" and the criteria for making such loans or gifts. On May 20, 1976, petitioner responded by stating that money was given to individuals who were financially unable to meet essential needs such as food, shelter, or health care due to unemployment. The recipients of the grants were determined by the elders of petitioner; however, petitioner stated that it did not maintain a record with respect to the amounts advanced to each recipient. Petitioner further stated that a recipient of a grant was under no legal obligation to repay the amount advanced. On June 11, 1976, respondent sought additional information by again asking petitioner to furnish a detailed explanation of the criteria used by petitioner for giving money to various individuals as well as any records for past grants. Petitioner responded by furnishing respondent with a list which reflected nothing more than the date of the grant, the name of the recipient, and the amount received. This list indicated that the officers of petitioner received grants as follows:

| Officer-recipient | Year of receipt | Amount |
|---|---|---|
| Salvador Benoit | 1973 | $280 |
|  | 1974 | 250 |
| William Lawson | 1973 | 585 |
| James McKee | 1974 | 700 |
|  | 1975 | 290 |
| Wayne Johnson | 1974 | 320 |

Following the receipt of this information respondent by a letter dated August 30, 1976, denied petitioner's application for exempt status. The basis for the denial was twofold. First, respondent took the position that petitioner's records of past grants did not demonstrate any criteria which constituted an exempt activity. Second, petitioner gave money with no legal obligations for repayment to its members and officers which resulted in a benefit to private shareholders or individuals defined in section 1.501(a)–1(c), Income Tax Regs.[2]

Petitioner appealed from this determination by requesting respondent to reconsider his determination. The parties held a conference on October 21, 1976, which was followed by petitioner's submission of further data regarding past grants. This information related to grants made only during 1975 and included the date, amount of the grant, the name of the recipient, and the reason for each grant which was designated as either unemployment, medical expenses, school scholarship, or moving expenses. The total amount of grants made during 1975 amounted to $7,799.74. The list of grants reflected that Mr. McKee received $430 in addition to the $290 as previously reported by petitioner. The reason given by petitioner for the grant to Mr. McKee was unemployment. Following the receipt of this information, respondent on April 5, 1977, issued a denial of exempt status setting forth the reasons consistent with its earlier denial on August 30, 1976, and subsequently on January 10, 1977.

In response to respondent's denial, petitioner pursuant to section 7428 filed a petition for declaratory judgment on July 5,

---

[2]Sec. 1.501(a)–1(c), Income Tax Regs., provides:

"'*Private shareholder or individual*' *defined.* The words 'private shareholder or individual' in section 501 refer to persons having a personal and private interest in the activities of the organization."

1977. The parties entered into a stipulation with respect to the administrative record whereupon respondent filed a Motion for Summary Judgment under Rule 217, Tax Court Rules of Practice and Procedure.

Petitioner contends that, while the stipulated administrative record is complete as to all documents filed from the date of application to respondent's final denial of exempt status, additional facts should be brought before this Court which relate to its grant program. Petitioner argues that respondent's final letter denying its exempt status was not responsive to the conversation that took place during the October 21, 1976, conference. In addition, petitioner argues that it took the necessary steps within its organization after respondent's determination which cured any possible defects regarding criteria for making grants. Consequently, petitioner takes the position that these criteria should be made part of the administrative record.

Rule 217(a), Tax Court Rules of Practice and Procedure, provides that only with the permission of this Court upon *good cause* shown will any party be permitted to introduce evidence other than that presented before the Internal Revenue Service and contained in the administrative record. Petitioner has failed to show good cause. The facts in the instant case demonstrate that throughout the application process petitioner was afforded ample opportunity to come forth with facts which would establish its grant program as an exempt activity. Following the conference of October 21, 1976, petitioner submitted documents attempting to explain its criteria utilized in the grant program. It was only after the submission of these documents that respondent determined that petitioner did not qualify as an exempt organization.

Our function with respect to declaratory judgment proceedings is to review respondent's administrative determination. Correspondingly, respondent's determination must be based upon all the material facts contained in the administrative record. *Houston Lawyer Referral Service v. Commissioner*, 69 T.C. 570, 573 (1978). To allow petitioner to include, without good cause, additional facts which arose subsequent to respondent's determination would render the administrative procedure meaningless and expand the declaratory judgment proceeding to a trial de novo, an intent not indicated in the legislative history

of section 7428. *Houston Lawyer Referral Service, supra* at 577. In addition, petitioner's argument with respect to respondent's failure to respond to the conversation at the conference (October 21, 1976) is without merit. We stated in *Houston Lawyer Referral Service, supra* at 576–577, that an applicant must submit in writing all matters discussed at a conference in order for respondent to make an appropriate decision.

In order for an organization to be exempt under sections 501(a) and 501(c)(3) from Federal income tax it must satisfy the organizational and operational test prescribed in sections 1.501(c)(3)–1(b) and 1.501(c)(3)–1(c), Income Tax Regs. If an organization fails to meet either test, it is not exempt. *Levy Family Tribe Foundation v. Commissioner*, 69 T.C. 615 (1978); sec. 1.501(c)(3)–1(a), Income Tax Regs. We limit the basis of our holding to the operation test because it is this test upon which respondent relied in denying the exempt status to petitioner.

Sections 1.501(c)(3)–1(c)(1) and (2), Income Tax Regs., provide:

(c) *Operational test.* (1) *Primary activities.* An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.

(2) *Distribution of earnings.* An organization is not operated exclusively for one or more exempt purposes if its net earnings inure in whole or in part to the benefit of private shareholders or individuals. * * *

Petitioner has the burden of proof and must prove that respondent's denial of exempt status is incorrect. *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488 (1977); Rule 217(c)(2)(ii), Tax Court Rules of Practice and Procedure. In this regard petitioner has failed.

During 1973, 1974, and 1975 petitioner operated in such a manner that various individuals, including petitioner's officers, received amounts of money in the form of "grants." These grants carried with them no legal obligation to repay any interest or principal. Petitioner contends, as it did during the administrative proceeding, that the grants were made in furtherance of a charitable purpose to wit, to assist the poor who were in need of food, clothing, shelter, and medical attention. However, petitioner was unable to furnish any documented criteria which would demonstrate the selection process of a deserving recipient, the reason for specific amounts given, or the

purpose of the grant. The only documentation contained in the administrative record is a list of grants made during 1975 which included the name of the recipient, the amount of the grant, and the "reason" for the grant which was specified as either unemployment, moving expenses, school scholarship, or medical expense.

Clearly this information precluded respondent from determining whether the grants were made in an objective and nondiscriminatory manner and whether the distribution of such grants was made in furtherance of an exempt purpose. As respondent points out, failure to develop criteria for disbursements of grants or to keep adequate records of each recipient can result in abuse. Accordingly, we find that petitioner has failed to establish that its grant program constituted an activity in furtherance of an exempt purpose.

Section 501(c)(3) provides that in order for an organization to obtain and maintain an exemption from Federal income tax it must be organized and operated *exclusively* for an exempt purpose. The term exclusively, however, has been construed not to mean "solely" or "absolutely without exception." An organization which engages in nonexempt activities can obtain and maintain exempt status so long as such activities are only incidental and less than substantial. *St. Louis Union Trust Co. v. United States*, 374 F.2d 427 (8th Cir. 1967); *Stevens Bros. Foundation, Inc. v. Commissioner*, 39 T.C. 93 (1962), affd. 324 F.2d 633 (8th Cir. 1963), cert. denied 376 U.S. 969 (1964); *Dulles v. Johnson*, 273 F.2d 362 (2d Cir. 1959), cert. denied 364 U.S. 834 (1960); *Estate of Philip R. Thayer v. Commissioner*, 24 T.C. 384 (1955); *Seasongood v. Commissioner*, 22 T.C. 671 (1954), affd. 227 F.2d 907 (6th Cir. 1955); *Huntington National Bank v. Commissioner*, 13 T.C. 760 (1949); *Better Business Bureau of Washington, D.C., Inc. v. United States*, 326 U.S. 279 (1945).

The administrative record illustrates the percentage of grants vis-a-vis total receipts of petitioner as follows:

| Year | Contributions and gifts to petitioner | Grants | Percentage |
|------|------|------|------|
| 1973 | $3,449.45 | $1,190.00 | 34.5 |
| 1974 | 73,521.47 | 18,088.72 | 24.6 |
| 1975 | 53,580.74 | 7,799.74 | 14.5 |
| Total | 130,551.66 | 27,078.46 | 20.74 |

These facts demonstrate that petitioner's grant program constitutes nonexempt activities which are more than incidental or a "slight and comparatively unimportant deviation from the narrow furrow of tax approved activity." *St. Louis Union Trust Co., supra* at 432–433. Accordingly, we find that petitioner has failed to establish that the grants made during 1973, 1974, and 1975 constituted an exempt activity and further that such activity was more than incidental to its overall purpose, i.e., religious. We hasten to point out that while the facts in the instant case merit a denial of exempt status to petitioner, we do not set forth a percentage test which can be relied upon for future reference with respect to nonexempt activities of an organization. Each case must be decided upon its own unique facts and circumstances.

We need not address ourselves to respondent's position which relates to petitioner's "net earnings" inuring to the benefit of petitioner's officers because a favorable finding for petitioner would not change the result of our holding. Therefore, respondent's determination that petitioner be denied exempt status is sustained.

Our holding does not preclude petitioner from filing a new application which includes the criteria allegedly established following respondent's final determination. See *Houston Lawyer Referral Service v. Commissioner*, 69 T.C. 570, 577–578 (1978).

*An appropriate order will be entered.*