LA VERDAD, PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 22393–82X.     Filed January 31, 1984.

*Douglas R. Drysdale,* for the petitioner.
*Elizabeth Sullivan,* for the respondent.

OPINION

CLAPP, *Judge*: Respondent determined that the petitioner, La Verdad, does not qualify for exemption from Federal income tax under section 501(1)[1] as an organization described in section 501(c)(3). Petitioner challenges respondent's determination by invoking the jurisdiction of this Court for a declaratory judgment pursuant to section 7428. The issue for decision is whether the petitioner has established that it will operate exclusively for one or more exempt purposes within the meaning of section 501(c)(3).

This case was submitted fully stipulated pursuant to Rule 122. Pursuant to Rule 217(b), the parties filed with this Court the administrative record relating to the request for a determination that petitioner qualifies as an exempt organization. The facts in the administrative record are assumed to be true for purposes of this proceeding. The record shows that petitioner has exhausted its administrative remedies.

Petitioner was incorporated on May 29, 1981, under the laws of the State of Montana. At the time the petition was filed, petitioner's registered office was located in Ennis, Mont.

Petitioner described on its application for recognition of exemption (Form 1023) its planned activities as follows:

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended, and all references to Rules are to the Tax Court Rules of Practice and Procedure.

* * * to be a vehicle to provide for the encouragement, provision and promotion of education; denominational, interdenominational and nondenominational religious training and philosophy; studies of the sciences; and the administration and provisions of charity and charitable programs.

These activities will be carried out with a minimum of administrative expenses to insure the greatest possible furtherance of the educational objectives.

Petitioner plans to commence its activities at the time tax-exempt status is secured.

When asked on the Form 1023 to describe what benefits, services, or products it will provide, petitioner answered: "Supporting charitable, religious, scientific, literary or other educational endeavors by funding individuals or organizations." Petitioner indicated on its application that it will provide scholarship benefits and student aid. When asked to describe the terms and conditions, petitioner stated:

Prior to the grant of any benefits or aid, terms and conditions will be established in conformity with applicable statutes and regulations. If appropriate, advance approval of such guidelines and procedures will be obtained from the I.R.S.

The number of grants that petitioner anticipates making is unknown. When responding to the question on the Form 1023 to describe the procedure for supervising its grants, petitioner stated: "Upon granting of scholarships, appropriate procedures for obtaining information regarding performance under the grant will be established." No financial data was supplied with the application. Petitioner indicated that it has no assets. One hundred percent of the financial support will be donations. No solicitations are planned. No fundraising program exists or is planned.

Respondent requested further information from petitioner on December 1, 1981, including a detailed explanation as to how petitioner planned to accomplish its objectives and how petitioner planned to secure donations. Petitioner responded on January 5, 1982, that:

The organization plans to accomplish its objectives through grants for purposes appropriate to, and in conformity with, a tax exempt organization as defined by the Internal Revenue Codes. It may do so through grants, scholarships, and conceivably could operate a charitable program. Additionally, however, it will operate through outright grants. It does not intend to engage in "charitable programs" as that term is used in connection with

many tax exempt organizations, the programs of which operate on a "trickle down" theory.

Petitioner stated that the donations to be received by the corporation will be from its organizers, their friends, associates, and others "interested in the entirety of a contribution reaching its appropriate and legitimate object." There are no fliers, news articles, or letters soliciting donations nor are any planned.

It is anticipated that scholarships will be given including, but not limited to, those going into ministry. Scholarships will be based upon financial need as well as excellence of attainment. When asked to furnish a copy of a scholarship application, petitioner responded:

We have no scholarship applications at the present time. The preferred method of operation would to [sic] be to utilize supervisory personnel in secondary schools and ministers of congregations to determine those individuals who are capable of great attainment in the service of their fellow man, but who are unable to reach their goals because of financial limitations.

By letter dated January 28, 1982, respondent requested from petitioner more detailed information regarding its proposed activities and the administration of its grant program as well as a proposed budget for 3 years, reflecting anticipated income and expenditures.

Specifically in response to a request to describe in detail and, if possible, to give specific examples of how it planned to serve as a vehicle "to provide for the encouragement, provision and promotion of education," petitioner responded by letter dated February 15, 1982:

The Corporation will provide counseling and financial assistance in the acquisition and provision of education to individuals handicapped by lack of funds or status, all in accordance with applicable statutes and regulations in the Internal Revenue Code.

Petitioner's assistance will not be limited to a particular race or religious belief.

Petitioner stated that no specific number or amount of grants are planned to be awarded in any year. Petitioner has not made any calculations as to the number of persons eligible to receive scholarships during the next 2 years, such a

determination being speculative in petitioner's view. When asked for a description of procedures for insuring that grantees had complied with the purpose of the grant, petitioner stated: "Determination of the grantees reporting procedure would be on an ad hoc basis, and sufficient to insure a matter of control and prevent any possible misuse of funds." When asked to indicate the objective criteria used to select a recipient, petitioner responded:

The primary objective criteria in selecting a recipient is that he is in no way connected with any member of the Corporation or any donor to it. The objective criteria will be inability of the individual receiving the grant to otherwise receive education or appropriate charitable benefits without assistance, and at the same time possess sufficient competency to engage in the prospective activity.

Petitioner has not formulated any budgets, stating that all of those involved with the corporation are working without remuneration and plan to continue to do so. There will be no receipts or expenditures until tax-exempt status is obtained. Petitioner plans to acquire no assets or liabilities but rather plans to utilize donations of time, equipment, etc.

Petitioner concluded by saying that:

In short, it is the desire and sole intention of the organizers and of the corporation itself to provide for education and charity without any diminution by reason of perquisites and consideration given, paid or allowed to any member of the Corporation or anyone connected with it.

Respondent issued an initial adverse ruling on petitioner's application on March 19, 1982, concluding that because petitioner had not described in detail its proposed activities, petitioner had failed to establish that it was organized and operated exclusively for tax-exempt purposes. After petitioner filed a protest, the final adverse ruling as to petitioner's exempt status under section 501(c)(3) was issued on August 6, 1982. This ruling was made for the following reasons:

You have failed to establish that you will be operated exclusively for exempt purposes as required by section 501(c)(3) of the Code. You have failed to establish that no part of your net earnings will inure to the benefit of private individuals. You have failed to establish that you will serve public rather than private interests.

Pursuant to section 501(a), an organization described in section 501(c)(3) shall be exempt from Federal taxation. An organization will qualify under section 501(c)(3) if three requirements are satisfied: (1)It is organized and operated exclusively for exempt purposes; (2) no part of its net earnings inures to the benefit of any private shareholder or individual; and (3) it devotes no substantial part of its activities to political or lobbying activity. If petitioner fails to meet any one of these three requirements, it will not qualify for tax-exempt status. *Western Catholic Church v. Commissioner*, 73 T.C. 196, 207 (1979), affd. 631 F.2d 736 (7th Cir. 1980). *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488, 492 (1977).

Respondent in the final adverse ruling determined, inter alia, that petitioner did not satisfy the first requirement, in that petitioner failed to establish that it will be operated exclusively for exempt purposes. The burden of proof is on the petitioner to establish that respondent's determination is erroneous. *Hancock Academy of Savannah, Inc. v. Commissioner, supra*; Rule 217(c) (2) (i).

Petitioner maintains that the administrative record demonstrates it will operate exclusively for exempt purposes. Respondent contends that petitioner's description of its proposed activities is not adequate to make an objective determination as to whether petitioner will in fact operate exclusively in furtherance of exempt purposes. For the reasons discussed below, we agree with the respondent.

Petitioner has not begun operations and does not plan to commence its activities prior to obtaining tax-exempt status. It is acknowledged that an organization may seek tax-exempt status prior to beginning operations. It must, however, describe proposed operations in sufficient detail to permit the conclusion that the organization will meet the necessary requirements of the exemption. See *World Family Corp. v. Commissioner*, 81 T.C. 958 (1983); *Dumaine Farms v. Commissioner*, 73 T.C. 650 (1980).[2] Without adequate information, the denial of exemption is warranted. *Church in Boston v. Commissioner*, 71 T.C. 102 (1978); *General Conference of the Free Church of America v. Commissioner*, 71 T.C. 920 (1979).

---

[2]See also *Pius XII Academy, Inc. v. Commissioner*, T.C. Memo. 1982–97, affd. 711 F.2d 1058 (6th Cir. 1983).

In its application and subsequent submissions in response to respondent's requests for information, petitioner merely has made statements as to its intended purposes without supplying any concrete information as to how it proposes to carry out those purposes. Petitioner has no fundraising program, and no solicitations are planned. Petitioner intends to receive its financial support from donations from organizers, their friends, and others that are interested, yet petitioner has supplied no estimate of anticipated income.

Petitioner has indicated that it will provide grants and scholarships. Petitioner has not determined the number of grants that will be given in any year or the amounts that will be provided. Petitioner has stated that the primary criteria for selecting a recipient is that he is in no way connected with any member of the organization. Petitioner has also indicated that recipients would be chosen on the basis of "financial need" and "excellence of attainment" but has not shown how it intends to define those broad terms. While scholarship applications might shed some light as to the criteria petitioner proposes to use, petitioner does not have any such applications nor are any contemplated. Instead, petitioner intends to use "supervisory personnel in secondary schools and ministers of congregations" for the selection process, but petitioner does not indicate on what basis these persons will make the determinations.

Petitioner has not established any procedures for insuring that the grants will be used for the intended purpose by the recipients. On its Form 1023, petitioner stated that appropriate procedures would be established upon the granting of scholarships. It also stated that prior to any grants, terms and conditions governing their use would be established. Petitioner has not provided any details as to what those terms, conditions, and procedures will be. When asked subsequently to clarify the followup procedures which would be instituted to prevent the misuse of funds, petitioner stated that the grantee reporting procedure would be on an ad hoc basis.

This Court has held that the distribution of grants must be made in an objective and nondiscriminatory manner in order to constitute an activity in furtherance of an exempt purpose. *Church in Boston v. Commissioner, supra* at 107. Absent disclosure of the criteria for selecting recipients and supervis-

ing grants, it is impossible to determine whether petitioner will operate in an objective and nondiscriminatory manner. Failure to establish criteria for disbursements of grants creates a potential for abuse. *Bethel Conservative Mennonite Church v. Commissioner*, 80 T.C. 352, 360 (1983), on appeal (7th Cir., July 11, 1983). While we have no reason to believe that petitioner is not sincere in its assurances that it will comply with the statute and the regulations, good intentions alone are not enough. Petitioner must supply sufficient information about its proposed activities to warrant a conclusion that it will operate in furtherance of exempt purposes.[3] Petitioner has simply provided broad, vague generalities as to how it intends to carry out its objectives. Petitioner has not furnished the number or amount of the grants to be awarded, defined the criteria for selecting recipients, or developed procedures for supervising grants. The administrative record does not demonstrate that the petitioner will operate exclusively in furtherance of an exempt purpose. Therefore, respondent's denial of petitioner's request for tax-exempt status was reasonable.

Because we have found that petitioner failed to establish that it will operate exclusively for exempt purposes, we need not address ourselves to the other grounds stated by respondent in the final determination letter.

Our holding does not preclude the petitioner from filing a new application for exemption and developing a more complete administrative record. *Houston Lawyer Referral Service, Inc. v. Commissioner*, 69 T.C. 570, 577–578 (1978).[4]

*Decision will be entered for the respondent.*

---

[3]See *Pius XII Academy, Inc. v. Commissioner, supra*.

[4]See also *Interneighborhood Housing Corp. v. Commissioner*, T.C. Memo. 1982–661; *Pius XII Academy, Inc. v. Commissioner, supra*.